485 P.3d 65
In the MATTER OF Judge Natalie T. CHASE
Supreme Court Case No. 21SA91 Supreme Court of Colorado.
April 16, 2021
Appearing for the Colorado Commission on Judicial Discipline: William J. Campbell, Executive Director, Erin Robson Kristofco, Special Counsel, Jessica E. Yates, Special Counsel, Denver, Colorado
Attorneys for Judge Natalie T. Chase: Burns, Figa & Will, P.C., John S. Gleason, Greenwood Village, Colorado
En Banc
Order re: Recommendation of the Colorado Commission on Judicial Discipline and Public Censure
PER CURIAM.
¶1 Judge Natalie T. Chase, you appear before this Court for imposition of discipline based upon violations of the duties of your office as a District Court Judge for the Eighteenth Judicial District. The Colorado Commission on Judicial Discipline ("the Commission") recommends approval of the Stipulation for Public Censure ("the Stipulation"), which you and the Commission executed pursuant to Rules 36(e) and 37(e) of the Colorado Rules of Judicial Discipline ("RJD"). Consistent with the Stipulation, the Commission recommends that this Court issue a public censure, and you ask that this Court accept your resignation from your position as a Judge. The Court adopts these recommendations.
¶2 In the Stipulation, you and the Commission agreed to the following facts:
1. In late January or early February 2020, Judge Chase, a Family Court Facilitator for the Eighteenth Judicial District, and Judge Chase's former law clerk attended a Safe Baby Program in Pueblo. Judge Chase drove both court employees in her car to and from Pueblo.
2. Judge Chase is white and the Family Court Facilitator is Black. On the way back from Pueblo, Judge Chase asked the Family Court Facilitator questions about why Black people can use the N-word but not white people, and whether it was different if the N-word is said with an "er" or an "a" at the end of the word. During the conversation, Judge Chase used the full N-word a number of times.
3. The Family Court Facilitator was uncomfortable because she could not leave the car or leave the conversation. The Family Court Facilitator felt angry and hurt by the conversation. She has explained that Judge Chase's use of the full N-word was "like a stab through my heart each time." The Family Court Facilitator did not feel free to express her discomfort or emotions due to fear of retaliation by Judge Chase.
4. In early February 2020, Judge Chase was in court, wearing her robe on the bench during a break while two or three other people were in the courtroom. Two employees in the courtroom were Black. Someone brought up watching the Super Bowl. Judge Chase then stated, from the bench, that she would be boycotting the Super Bowl because she objected to the NFL players who were kneeling during the National Anthem in protest of police brutality against Black people.
5. On the Monday after George Floyd was killed in Minneapolis, Minnesota, in May 2020 and Black Lives Matter protests had occurred in Denver, two Black court employees were in Judge Chase's courtroom. One of them asked the other if they had seen the George Floyd protests. Judge Chase then, while wearing her robe and sitting on the bench, told the employees some of her opinions regarding racial justice issues. Judge Chase asked one employee some questions about the Black Lives Matter movement. The employee tried to explain the Black Lives Matter movement, and Judge Chase stated that she believes all lives matter. Judge Chase also stated that the conduct of the police officers in the George Floyd matter should be investigated.
6. In early 2020, Judge Chase directed her law clerk to do some legal research related to a personal family legal issue that was unrelated to the Judge's official case load.
7. On August 11, 2020, Judge Chase had a medical episode at the courthouse. After courtroom deputies came to her aid, Judge Chase declined an ambulance. She then asked one of the court employees to drive her to the emergency room. After arriving, Judge Chase asked the court employee to stay with her at the hospital. The employee missed a half day of work to accommodate Judge Chase.
8. Throughout 2020, Judge Chase forwarded personal emails to her clerk and then asked her clerk to edit or rewrite the emails so they sounded better before the Judge sent them off to the intended recipient.
9. Judge Chase repeatedly discussed personal and family matters while talking with staff and other employees in office work areas and as part of court business in a manner that was not dignified or courteous.
10. In the first half of 2020, Judge Chase told her clerk she was leaving briefly to meet with another judge. When she returned from the meeting, and the clerk asked how it went, Judge Chase replied with a derogatory reference to the other judge, calling her a "f****** b****."
¶3 In addition to these stipulated facts, you further agreed with the Commission as to the following conclusions:
1. Although you maintain that you did not intend any racial animus, you acknowledge that your statements violated Canon Rule 1.2, which requires a judge to act in a manner that promotes public confidence in the judiciary. You acknowledge that your use of the N-word does not promote public confidence in the judiciary and creates the appearance of impropriety. Although not directed at any person, saying the N-word has a significant negative effect on the public's confidence in integrity of and respect for the judiciary.
2. You acknowledge you also undermined confidence in the impartiality of the judiciary by expressing your views about criminal justice, police brutality, race and racial bias, specifically while wearing your robe in court staff work areas and from the bench. You acknowledge that your statements violated Canon Rule 2.3, which prohibits a judge from manifesting bias or prejudice based on race or ethnicity by word or action.
3. You acknowledge that you failed to act in a dignified and courteous manner when you disparaged one or more judicial colleagues and specifically referred to one judicial colleague in derogatory terms.
¶4 Based on these facts and conclusions, the Commission agreed in the Stipulation to recommend that you be publicly censured. You, in turn, have expressed remorse, apologized for your conduct, and agreed to waive your right to a hearing in formal proceedings, to be publicly censured, and to resign your position as a Judge.
¶5 RJD 37(e), titled "Stipulated Resolution of Formal Proceedings," allows the Commission to file a "stipulated resolution" as a recommendation to this Court in a disciplinary proceeding. In filing such a stipulation, the Commission has authority to recommend, among other possible sanctions, that this Court "[r]eprimand or censure the Judge publicly ... by written order." RJD 36(e); accord Colo. Const. art. VI, § 23 (3)(f) ("Following receipt of a recommendation from the commission, the supreme court ... shall order removal, retirement, suspension, censure, reprimand, or discipline, as it finds just and proper ...."). Under RJD 40, after considering the evidence and the law, this Court is required to issue a decision concerning the Commission recommendations. If the Commission recommends adoption of a stipulated resolution, "the Court shall order it to become effective and issue any sanction provided in the stipulated resolution, unless the Court determines that its terms do not comply with Rule 37(e) or are not supported by the record of proceedings." Id .
¶6 Upon consideration of the law, the evidence, the record of the proceedings, the Stipulation, and the Commission's recommendation, and being sufficiently advised in the premises, this Court concludes that the terms of the Stipulation comply with RJD 37(e) and are supported by the record of the proceedings. Therefore, this Court orders the Stipulation to become effective and issues the agreed-upon sanctions.
¶7 This Court hereby publicly censures you, Judge Natalie T. Chase, for failing to maintain the high standards of judicial conduct required of a judge; for violating Canon Rule 1.2, which requires that a judge at all times shall act in a manner that promotes public confidence in the judiciary; for violating Canon Rule 2.3, which prohibits a judge from manifesting bias or prejudice based on race or ethnicity by her words or actions; for violating Canon Rule 1.3, which prohibits a judge from abusing the prestige of the judicial office; and for violating Canon Rule 2.8, which requires a judge to be patient, dignified, and courteous. Further, the Court accepts your resignation as a Judge in the Arapahoe County District Court, effective forty-five days from this date.1 1 Pursuant to RJD 6.5(a) and RJD 37(e), the Stipulation, the Commission's recommendation, and the record of proceedings became public when the Commission filed its recommendation with this Court.